**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KURT HOFFMEISTER,
Plaintiff-Appellant,

v.

No. 95-2070

MICHELIN 1993 EARLY RETIREMENT
AND VOLUNTARY SEPARATION PLAN;
MICHELIN TIRE CORPORATION,
Defendants-Appellees.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-94-1384-6-20)

Argued: May 7, 1996

Decided: February 9, 1998

Before WIDENER, MURNAGHAN, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Hal Jerome Warlick, WARLICK LAW OFFICE, Easley,
South Carolina, for Appellant. Thomas Allen Bright, HAYNS-
WORTH, BALDWIN, JOHNSON & GREAVES, P.A., Greenville,
South Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff Kurt Hoffmeister appeals the district court's entry of judgment against him on the grounds that he did not obtain the management approval necessary to receive voluntary separation benefits under the defendant Michelin 1993 Early Retirement Incentive and Voluntary Separation Plan (the plan), an employee benefit plan subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (West 1997), and maintained by Hoffmeister's employer, defendant Michelin Tire Corporation (Michelin). The district court issued its ruling orally under Fed. R. Civ. P. 52 at the conclusion of plaintiff's evidence at a bench trial. We affirm.

Michelin employed Hoffmeister at Michelin America Research and Development Corporation in Greenville, South Carolina. On August 3, 1993, at a meeting held by his department manager, Martin Remmick, Hoffmeister learned that Michelin had created the 1993 Michelin Early Retirement Incentive and Voluntary Separation Plan to downsize its workforce. The plan provided that "with management approval," certain employees who voluntarily quit could receive certain salary and some health care benefits for a period of time based on the length of their employment. The Plan stated that Michelin "reserve[d] the right to deny the Voluntary Separation Benefits portion of this program to any employee," and gave Michelin, as Plan Administrator, "the sole discretionary authority to determine benefit eligibility and to construe plan provisions." Hoffmeister decided to seek to take advantage of the voluntary separation opportunity to pursue a doctoral degree in mechanical engineering. He obtained a fellowship offer from the University of Iowa commencing in January, 1994, and submitted a written request for voluntary separation benefits on September 13, 1993.

During September, 1993, Hoffmeister met several times with his

2

immediate supervisor, John Hutz, and Martin Remmick, the department manager. Their discussions related to the difficulty in Hoffmeister departing in time to assume the university fellowship. Hutz testified that because Hoffmeister possessed mechanical engineering skills[1] he told Hoffmeister that"[w]e needed him and wanted him to stay on." Hoffmeister agreed Hutz told him this. Hutz told Remmick that he did not want Hoffmeister to leave, though he did not inform Hoffmeister of this recommendation.[2] Hoffmeister testified that Remmick refused to approve him for benefits "unless I was willing to stay and give them more time to make arrangements." After an informal conversation with Remmick on September 17, 1993, Hoffmeister decided to decline the fellowship for January and stay until spring. Hoffmeister believed that by that concession he had ensured his voluntary separation application would be approved. At trial, however, Hoffmeister admitted that no one ever told him he had been granted management approval for the voluntary separation benefits.

On September 21, 1993, Remmick met with his supervisor, Christophe Laprais, to discuss Hoffmeister's request, but"[n]o reasonable way to accommodate Hoffmeister was found." On September 22, 1993, Remmick told Hoffmeister that his request had been disapproved by Jean-Pierre Boca, the president of Michelin America Research and Development Corporation, and Edward Ligon, Hoffmeister's representative in the personnel department.

Hoffmeister informally appealed the decision in meetings with Laprais, Ligon, and Boca. In each case, he was told that the company did not want him to leave and that the company would not approve voluntary separation benefits for him. Hoffmeister submitted a request for a written confirmation of the denial on November 4, 1993.

---

[1] Hutz testified that Hoffmeister"has a background in finite element analysis and [is] very highly skilled in mechanical engineering . . . he's at a much higher level than anybody else in the group. And his key role was to help develop analytical tools that we could use in order to do our job quicker and better."

[2] Hoffmeister testified that other employees who were considered essential to the organization were told from the outset by their supervisors that they would not be approved for voluntary separation benefits.

3

Ligon replied on November 9, 1993, setting forth the following reasons for the denial:

> 1. You occupy a position that is required for the success of this organization.
>
> 2. You contribute to the success of this organization.
>
> 3. Your performance and behavior are appreciated in this organization.
>
> 4. If you were to leave, for any reason, you would have to be replaced. There was, to my knowledge, no one within Michelin who was available and had a profile similar to yours who could reasonably assume your responsibilities.
>
> My colleagues and I met every Thursday evening during the time of the Programs window to discuss available resources. I kept very close tabs on this, and know that no one was available.
>
> 5. The Program was not intended for those with your profile.

Hoffmeister then wrote to Michelin's Director of Human Resources, Richard Wilkerson, requesting that his application be reconsidered. Wilkerson responded, stating "[y]ou have been told you are a valued employee and that your skills are needed in the organization. Therefore, the Company has decided not to offer separation benefits to you at this time." Wilkerson pointed out that Michelin had reserved the right to deny voluntary separation benefits to any employee and informed Hoffmeister that, under the plan, he had a right to appeal the denial by submitting a written request and had a right to representation in the appeal.

Hoffmeister retained counsel and filed an appeal with Michelin on February 17, 1994. On March 21, 1994, Hoffmeister and his counsel met to discuss the appeal with Michelin officials. On June 15, 1994,

4

Michelin's Director of Human Resources sent Hoffmeister a letter informing him the appeal was denied and stating:

> The Company, having taken your request seriously, studied the effect on the organization, and decided that it would not be logical. If you had been permitted to accept the program, ultimately the Company would have had to recruit and hire another employee to fill in for the succession of moves that your vacancy would have created. That being the case, I must uphold the decision to deny your request.

The letter also noted that at the March 21, 1994 meeting Hoffmeister stated that no one specifically told him that he would receive severance benefits. Hoffmeister filed this action pursuant to 29 U.S.C. § 1132(a)(1)(B) on May 19, 1994.

At trial, the district court heard testimony from five of plaintiff's witnesses, including Hoffmeister himself, received numerous documentary exhibits, and heard a proffer of plaintiff's remaining evidence before issuing its oral ruling. A witness who was a Michelin department manager, Dr. Baker, testified that Peter Tkacic, an employee who worked for him and was an "individual contributor" like Hoffmeister, was approved for benefits, although "in a sense, [Tkacic] had already been dealt with because an individual, Didier Lefebvre, was there who would pick up some of his responsibilities."

In its ruling, the district court found that management approval was a valid condition the plan placed on the receipt of voluntary separation benefits and that Hutz and Remmick, Hoffmeister's supervisor and department head, may have tacitly approved his request. The court held, however, that Hoffmeister failed to obtain the final management approval required under the plan to obtain a right to voluntary separation benefits. The court reviewed Michelin's decision to deny benefits under the standard set out in Doe v. Group Hospitalization & Medical Services, 3 F.3d 80, 85 (4th Cir. 1993), under which a plan administrator's discretionary decision to deny benefits is afforded a lower level of deference when the administrator would benefit from the denial. The court found that Michelin denied Hoffmeister's request because he was an essential employee whose unique skills would have to be replaced were he to leave. It also found that

5

Hoffmeister never received management approval. The court held that since the plan's written provisions were controlling, the fact that lower levels of management may have implicitly approved Hoffmeister's request did not estop the company from ultimately denying benefits or require an award of benefits under a detrimental reliance theory.

On appeal, Hoffmeister raises two contentions that merit mention. First, Hoffmeister argues that the approval of his immediate supervisor and departmental manager satisfied the plan's requirement that he obtain management approval. Where voluntary separation benefits are conditioned on management approval, however, the approval of the employee's supervisor does not create a right to receive benefits if benefits are denied by a higher level of company management. See Bair v. General Motors Corp., 895 F.2d 1094, 1097-1098 (6th Cir. 1990). In this case, plaintiff's own evidence showed that the decision that he was too valuable an employee for Michelin to pay to leave was made at the highest level of Michelin America Research and Development Corporation.

Second, Hoffmeister argues that the denial of benefits was arbitrary and capricious because one Peter Tkacic received voluntary separation benefits although he, like Hoffmeister, was a valuable employee. The evidence shows, however, that unlike Hoffmeister, Tkacic's department manager was able to get another Michelin employee to assume Tkacic's job responsibilities. Further, "nothing in ERISA prevents [the employer] from providing its employees with benefits on a case by case basis - as long as that limitation is explicitly stated as part of the plan." Hamilton v. Air Jamaica, Ltd., 945 F.2d 74, 77-78 (3rd Cir. 1991), cert. denied, 503 U.S. 938 (1992). Here, Michelin imposed an explicit limitation of obtaining management approval, and plaintiff's evidence shows that the approval process included a review of the employee's value to the company measured by the difficulty of replacing his skills and that Hoffmeister, in fact, possessed certain mechanical engineering skills. Where voluntary benefits are denied on the ground that an employee is necessary to the company's business, and the evidence supports this assertion, the denial "cannot be deemed arbitrary or capricious." Murphy v. International Business Machines Corp., 23 F.3d 719, 721 (2nd Cir. 1994).

In sum, essentially for the reasons expressed by the district court in its oral opinion, the judgment of the district court is accordingly

AFFIRMED.

7